## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **Estate of Venita Felton** ) | |
| **By Duery Felton, as Personal Representative** ) | |
| **of the Estate of Venita Felton** ) | |
| **306 Randolf Place, N.E.** ) | |
| **Washington, D.C.  20002-2141** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA** ) | |
| **Serve: Mayor Adrian M. Fenty** ) | |
| **One Judiciary Square** ) | |
| **441 4th Street, NW** ) | |
| **Washington, D.C.  20001** ) | |
| ) | |
| **and** ) | **Case No.:_____** |
| ) | |
| **Individual Development Inc.** ) | |
| **1010 Vermont Ave N.W. Suite 810** ) | |
| **Washington D.C. 20005** ) | |
| **Serve: Registered Agent** ) | |
| **David W. Wilmot** ) | |
| **1010 Vermont Ave N.W. #810** ) | |
| **Washington D.C. 20005** ) | |
| **and** ) | |
| ) | |
| **District of Columbia Community Services** ) | |
| **Serve: Superintendent of Corporations** ) | |
| **Dept. of Consumer and Regulatory Affairs** ) | |
| **Corporations Division - Business License Center** ) | |
| **941 North Capitol St. N.E. Room 1100** ) | |
| **Washington D.C. 20002** ) | |
| ) | |
| **and** ) | |
| ) | |
| **Community Alternatives of D.C. Inc.** ) | |
| **A.K.A. "VOCA Corporation of Washington D.C.")** ) | |
| **200 K St. NW** ) | |
| **Washington D.C. 20009** ) | |
| ) | |
| **and** ) | |
| ) | |

|                                        |     |
|----------------------------------------|-----|
| **PSI Associates Inc.**                | )   |
| **A.K.A. PSI Family Services Inc.**    | )   |
| **A.K.A. PSI Services Inc.**           | )   |
| **104 Michigan Ave NE**                | )   |
| **Washington D.C. 20017**              | )   |
|                                        | )   |
| **Defendants.**                        | )   |

## COMPLAINT

**(Violations of Civil Rights, Negligence, Statutory Violations, Breach of Fiduciary Duty)**

### Introduction

This case is brought by the Estate of Venita Felton.  Ms. Felton was a profoundly mentally retarded woman who was a long-time admittee of the District of Columbia mental retardation system.  Ms. Felton was completely dependent on the District of Columbia and the group home providers for her daily care.  During the course of her residence with the defendants, Felton was subjected to extreme neglect, culminating in ingestion of dangerous foreign objects, malnourishment, ulcers, diarrhea, chronic constipation, abdominal scarring, and further related injuries leading to her death.  The actions of the defendants were in blatant disregard for Felton's rights under 42 U.S.C. § 1983, the Rights of Mentally Retarded Citizens Act (D.C. Code § 7-1301.02, et seq.), federal and D.C. statutes regulating community residential facilities, and the common law of the District of Columbia.  To vindicate the rights of Venita Felton, Ms. Felton's estate seeks compensatory and punitive damages against Felton's former caretakers.

### Jurisdiction

1.     This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) & (4) (civil rights), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

**Parties**

2.      Plaintiff Duery Felton is the personal representative of the estate of Venita Felton. At the time of her death, and at all times relevant hereto, Venita Felton was a mentally retarded adult who resided in several different intermediate care facilities located at 4515 Edson Pl. NE, Washington D.C. 20019 ("Edson Pl. House,") 1004 Urell Pl, NE, Washington D.C. 20003 ("Urell Pl. House,") 6915-6917 Maple St, Washington D.C. 20012 ("Maple St. House,").  At all times relevant hereto, Ms. Felton was completely dependent on defendants for her care and well-being.

3.      At all times relevant hereto, Defendant District of Columbia Community Services ("DCCS"), was a non-profit corporation which operated residential care facilities, including Maple St. House and Urell Pl. House, in the District of Columbia.  DCCS owned and operated the Maple St. House and the Urell Pl. House through a contract with the District of Columbia to provide intermediate care services, medical services and habilitative services to mentally retarded citizens of the District of Columbia, including Venita Felton.

4.      At all times relevant hereto, DCCS held itself out to the general public as competent and qualified to render intermediate residential care and treatment to its clients, including Venita Felton, by and through its actual and/or apparent agents, servants and/or employees.  In rendering care to Felton as hereinafter set forth, said actual and/or apparent agents, servants and/or employees were acting within the course and scope of their employment and/or agency with DCCS, and DCCS is therefore liable for their actions in connection therewith, pursuant to the doctrines of Respondeat Superior and/or agency.

5.      Defendant Individual Development Inc. ("IDI") is a non-profit corporation which operates intermediate care facilities in the District of Columbia.  At all times relevant hereto, IDI

owned and operated Edson Pl. House through a contract with the District of Columbia government to provide intermediate care services, medical services and habilitative services to mentally retarded citizens of the District of Columbia, including Venita Felton.

6.      At all times relevant hereto, IDI held itself out to the general public as competent and qualified to render residential care and treatment to its clients, including Venita Felton, by and through its actual and/or apparent agents, servants and/or employees.  In rendering care to Felton as hereinafter set forth, said actual and/or apparent agents, servants and/or employees were acting within the course and scope of their employment and/or agency with IDI, and it is therefore liable for their actions in connection therewith, pursuant to the doctrines of Respondeat Superior and/or agency.

7.      At all times relevant hereto, defendant Community Alternatives of D.C. Inc, also known as VOCA Corporation of Washington D.C. (collectively called "VOCA"), owned and operated the day program that Venita Felton attended. VOCA also managed Edson Pl. House with IDI.  VOCA Corporation of Washington D.C. is a corporation which operates adult day programs in the District of Columbia.

8.      At all times relevant hereto, VOCA held itself out to the general public as competent and qualified to render residential care and treatment to its clients, including Venita Felton, by and through its actual and/or apparent agents, servants and/or employees.  In rendering care to Felton as hereinafter set forth, said actual and/or apparent agents, servants and/or employees were acting within the course and scope of their employment and/or agency with VOCA, and it is therefore liable for their actions in connection therewith, pursuant to the doctrines of Respondeat Superior and/or agency.

9.     At all times relevant hereto, defendants PSI Associates Inc. ("PSI"), owned and operated the day program that Venita Felton attended. Defendant PSI is a corporation that operates adult day programs in the District of Columbia.

10.     At all times relevant hereto, the District of Columbia was responsible for the licensing and monitoring of intermediate care facilities, including the Maple Street House, Urell Place House, and Edson Place House, and for ensuring that those Houses provided adequate food, shelter, medical care and nursing care to their residents, including Venita Felton.  Those obligations were administered by the District of Columbia through the District's Mental Retardation and Developmental Disabilities Administration ("MRDDA").

## Statement of Facts

11.     At all times pertinent hereto, Venita Felton was a ward of the District of Columbia and a long-time admittee of the District of Columbia mental retardation system. Felton was a member of the *Evans* class action and was entitled to the protection of the series of orders and consent decrees entered in that case by Judge Pratt, Judge Harris and Judge Huvelle.

12.     After the closure of Forest Haven, the District of Columbia placed Ms. Felton in residential group homes, operated by DCCS, IDI and VOCA.  Felton began receiving intermediate level residential care from the defendants in 1980 and remained under their care until her death in January 2007.

13.     While under the care of her residential group home providers, Felton attended day programs managed by PSI Associates Inc.  These programs were responsible for carrying out goals set forth in Felton's support plans as well as ensuring her safety throughout her attendance. She attended PSI day programs until Summer 2001.

14.     After Summer 2001, Felton was enrolled in Vocations Day Programs, managed by VOCA Corporation of Washington DC.  These programs were responsible for carrying out goals set forth in Felton's support plans as well as ensuring her safety throughout her attendance. She remained in Vocations day program until she was no longer able to attend before her death.

15.     At the time of Ms. Felton's admission to DCCS, IDI and VOCA and at all times thereafter, defendants and their agents/employees were aware of Ms. Felton' health condition and her needs and represented that they and their agents/employees could fully and adequately provide the necessary care for Ms. Felton.

16.     The DCCS and IDI facilities had numerous and persistent problems noted by the Court Monitor in the *Evans* class action and by inspectors from the D.C. Department of Health and the Department of Health and Human Services, related to Ms. Felton.  These included the failure to provide adequate physician and nursing services to Ms. Felton, the failure to implement adequate measures to prevent ingestion of unwanted foreign objects, chronic constipation and malnourishment, the failure to provide preventive and general care for Ms. Felton, the failure to provide adequate and trained staff, the failure to keep adequate records and the failure to provide adequate food and nutrition.

17.     Defendants were aware of these deficiencies in the care and treatment received by Felton at the DCCS and IDI Houses and refused to implement or enforce the implementation of adequate measures to correct and/or prevent these deficiencies.

18.     Defendants were aware that these deficiencies were a threat to the safety and well-being of residents generally, and Venita Felton in particular, who was in need of basic nursing care and assistance with the activities of daily living, and that these care inadequacies would result in injury to Venita Felton.

19.     Notwithstanding their knowledge of Ms. Felton's health condition and her requirements, defendants allowed Felton to suffer from recurring diarrhea, chronic constipation and frequent ingestion of unwanted foreign objects, including but not limited to the development of a bezoar in 1988 and the ingestion of a glove in Spring of 1993.  Defendants' neglect resulted in malnourishment, dehydration, chronic constipation, abdominal scarring and further related injuries which led to Ms. Felton's death on January 15, 2007.

20.     As a direct and proximate result of the acts described above, Felton suffered damages which include, but are not limited to, the following: severe and permanent injuries; physical pain and mental anguish; disfigurement, deformity, and associated humiliation and embarrassment; medical expenses; death; and Felton was otherwise damaged.

21.     As a ward of the District of Columbia, Felton had clearly established rights protected by the United States Constitution, the United States Code, the District of Columbia Code, and court orders in the *Evans* class action.

22.     At all times relevant to this case, the District of Columbia government had a policy of neglect toward the needs of its mentally retarded wards, in violation of their clearly established rights under the U.S. Constitution, District of Columbia statutes and court decrees. This policy was evidenced by the repeated violations by the District of various court orders in the *Evans* case and its repeated failures to respond to the failings at DCCS and IDI Houses as pointed out by the Court Monitor and the Department of Health and Human Services.

## COUNT I

**(Negligence)**
**(All Defendants)**

23.     All of the preceding paragraphs are realleged and incorporated by reference herein.

24.     Defendants represented to the public in general and Ms. Felton specifically, that they could provide a staff of a sufficient number of properly trained, supervised and equipped personnel to meet the total care and needs of residents in intermediate care facilities, and specifically Venita Felton.

25.     All of the defendants and their agents/employees had a duty to use ordinary care to provide Felton with adequate food, shelter, clothing, and medical care, and to properly monitor, assess, treat, maintain and protect her. Defendants further had a duty to take care of Ms. Felton's daily needs and treat her with dignity. These duties are non-delegable and defendants are therefore responsible for the conduct of any employees, agents and/or independent contractors to whom it delegates the responsibility for such care.

26.     At all times relevant hereto, defendants were required to provide continuing and uninterrupted care for Ms. Felton. During the course of this relationship, defendants subjected Ms. Felton to substandard care, abuse and neglect as follows:

(a)     Defendants and their agents/employees subjected Ms. Felton to neglect and violations of basic human dignity by failing to properly provide adequate supervision, food and nutrition;

(b)     Defendants and their agents/employees failed to properly assess, reassess, treat and/or rehabilitate Ms. Felton' physical and mental condition;

(c)     Defendants and their agents/employees failed to assess and implement an appropriate plan of therapy for Ms. Felton;

(d)     Defendants and their agents/employees failed to prevent Ms. Felton's ingestion of unwanted and dangerous foreign objects, which resulted in her eating a glove, among other objects;

(e)     Defendants and their agents/employees failed to monitor Ms. Felton's condition after the ingestion of the glove, leading to a recurrence of ingestion of unwanted and dangerous foreign objects;

(f)     Defendants and their agents/employees left Ms. Felton in a state of continuous abdominal damage; she developed ulcers, foreign bodies in her gut, diarrhea, chronic constipation, abdominal scarring, and malnourishment which, in turn, resulted in death;

(g)     Defendants and their agents/employees violated District of Columbia and federal law in failing to accommodate Ms. Felton's condition and disabilities;

(h)     Defendants and their agents/employees violated District of Columbia and Federal regulations which applied to residents of intermediate care facilities generally and to Ms. Felton specifically; and

(i)     Defendants and their agents/employees violated District of Columbia and federal regulations including but not limited to 42 C.F.R., Part 483, §483.1 et seq., D.C. Code § 44-501 et seq., and DCMR, Title 22, Chapter 30 through 35.

27.     Defendants and their agents/employees acting within the scope of their employment negligently breached their duty of care and protection and negligently provided substandard care to Ms. Felton by virtue of the acts described above.  In addition, defendants negligently breached their duty of care and protection in the following manner:

(a)     Failure to provide adequate medical care, adequate nursing care, adequate general care, adequate personnel training, adequate staff supervision, and an adequate care plan which would have prevented physical and mental injuries suffered by Ms. Felton;

(b)     Failure to adequately staff the Houses and other facilities in a manner responsive to the needs of the residents, in particular to the needs of Venita Felton;

(c)     Failure to provide adequate staff development so that the personnel would be trained to provide for the needs of the facility residents, particularly the special needs of Venita Felton;

(d)     Failure to properly assess Ms. Felton's needs;

(e)     Failure to provide preventive and general care;

(f)     Failure to ensure that Felton received preventive services and prompt treatment for her serious health conditions;

(g)     Failure to provide nursing services for the needs of Felton;

(h)     Failure to follow accepted and standard medical and nursing procedures and safety methods;

(i)     Failure to adequately supervise the care given to Ms. Felton;

(j)     Failure to respond to the medical and nursing needs of Venita Felton in an appropriate manner within a reasonable period of time;

(k)     Failure to create, implement and follow appropriate care plans responsive to the needs of Venita Felton;

(l)     Failure to provide appropriate therapy and rehabilitative care for Venita Felton;

(m)     Failure to provide appropriate supervision to prevent falling, injury and self injurious behavior;

(n)     Failure to provide adequate nutrition, hydration and assistance in eating;

(o)     Failure to provide for the human dignity of Venita Felton by allowing her to develop ulcers, ingest dangerous objects, suffer chronic constipation, injuries from falls and self injurious behavior, malnutrition, and dehydration;

(p)     Failure to recognize and remedy the overt signs of neglect in Ms. Felton' physical condition;

(q)     Failure to hire a sufficient number of attendants or employees to adequately supervise the protection and care of Venita Felton;

(r)     Failure to detect, investigate, and/or prevent the mental and physical abuse suffered by Venita Felton as a result of the defendants' neglect;

(s)     Negligent hiring and retention of staff that subjected Ms. Felton to substandard care, repeated neglect, and abuse, both physical and mental; and

(t)     Failure to provide the training to adequately supervise, protect and care for Ms. Felton.

28.     Such failures constitute a continuous and repetitious wrong which did not terminate until Ms. Felton's death on June 30, 2000.

29.     Such continuous and repetitious wrongs resulted in cumulative damages flowing from the entirety of such failures.

30.     As a direct and proximate result of the aforesaid acts of neglect and negligence, Venita Felton suffered severe and substantial damages as aforesaid.

## COUNT II

### (Negligent Hiring and Retention)
### (All Defendants)

31.     All of the preceding paragraphs are realleged and incorporated by reference.

32.     At all times relevant hereto, defendants owed Venita Felton the duty to exercise that degree of care, skill and diligence ordinarily exercised by licensed health care providers in the hiring and retention of appropriate personnel.

33.     Defendants had a duty to hire enough personnel to adequately see to the needs of their resident consumers and Venita Felton specifically.

34.     Defendants breached that duty by failing to hire sufficient personnel to see to the needs of their consumers and Venita Felton specifically.

35.     Defendants had a duty to hire staff who were trained and competent to deliver appropriate care and treatment to Venita Felton, and to not retain staff who did not fulfill those duties.

36.     Defendants breached that duty by hiring and retaining untrained and/or incompetent staff.

37.     Defendants had a duty to hire supervisors who were trained and competent to supervise staff in the performance of their daily responsibilities, specifically the care and treatment of Venita Felton, and to not retain supervisors who did not fulfill those duties.

38.     Defendants breached that duty by hiring and retaining untrained and/or incompetent supervisors.

39.     As a result of said defendants' negligent hiring and retention, Felton suffered severe and substantial damages as aforesaid.

## COUNT III

### (Breach of Fiduciary Duty)
### (All Defendants)

40.     All of the preceding paragraphs are realleged and incorporated by reference.

41.     At all times relevant hereto, by virtue of the special degree of trust and reliance Venita Felton necessarily had to place in defendants for her care and protection, defendants had a fiduciary responsibility to Venita Felton.

42.     Defendants' fiduciary responsibility to Venita Felton required that they take all possible steps to provide for Ms. Felton's care, safety, and her medical and nursing needs.

43.     Defendants breached this duty by allowing Venita Felton to be placed in a substandard intermediate care facility; by failing to provide adequate and proper medical, nursing, and general care to Felton; by failing to provide a safe and secure environment; by failing to provide properly trained and supervised personnel at her location; by failing to comply with physicians' orders regarding Ms. Felton' care; by failing to monitor and/or enforce the applicable federal and D.C. regulations; and by failing to remove Ms. Felton to a more appropriate environment.

44.     As a direct and proximate breach of these fiduciary duties, Venita Felton suffered severe and substantial damages as aforesaid.

## COUNT IV

### (Violation of Statute)
### (IDI, DCCS, VOCA and PSI)

45.     All of the preceding paragraphs are realleged and incorporated by reference, herein.

46.     By virtue of the acts described above, defendants and their agents/employees violated District of Columbia and federal regulations and statutes, including but not limited to, 42 C.F.R. Part 483, § 483.1 et seq., D.C. Code § 44-501 et seq., and D.C.M.R., Title II, Chapters 30-35.

47.     The above referenced regulations and/or statutes were enacted for the public health, safety and protection of long-term care residents including Venita Felton, who was a member of the class of individuals who were intended to be protected by these regulations and/or statutes.

48.     Defendants, as a condition precedent to the receipt of federal funding for their facilities, were required to comply with the federal regulations pertaining to long-term care facilities who participate in Medicare and/or Medicaid.

49.     Defendants' violations of the regulations and/or statutes mentioned above constitute negligence per se, requiring defendants to be held strictly liable for all damages proximately resulting from said violations.

50.     As a direct and proximate result of defendants' regulatory and statutory violations, Venita Felton suffered severe and substantial damages as aforesaid.

### COUNT V

### (Deprivation of Civil Rights under 42 U.S.C. §1983)
### (District of Columbia)

51.     All of the preceding paragraphs are realleged and incorporated by reference herein

52.     At all times relevant hereto, Venita Felton was a ward of the District of Columbia, and completely dependent on the District of Columbia for her care, protection, and well-being.

53.     From 1986 until her death on January 15, 2007, the District of Columbia provided Ms. Felton with an environment which was unsafe and inadequate to meet her basic needs. This environment included untrained staff who failed to follow established procedures by not monitoring Ms. Felton's condition to the point where she suffered ongoing ingestion of unwanted foreign objects; developed ulcers, diarrhea, chronic constipation, abdominal scarring, and malnourishment which, in turn, resulted in death.

54.     The District of Columbia knew or should have known about the substandard quality of care given Venita Felton by the defendants.

55.     After the surgery to remove the bezoar and the surgery to remove the glove by defendants' neglect, plaintiff was returned by defendant to the care of the non-municipal defendants where she was again subjected to continuing neglect and again continued ingesting unwanted foreign objects, suffered diarrhea, chronic constipation, abdominal scarring, and malnourishment and other injuries symptomatic of neglect.

56.     At all times relevant hereto, it was the policy of the District of Columbia, as established and implemented by D.C. policy makers to provide unsafe surroundings for persons under their care, without adequate medical and nursing care. This policy and procedure was intentional and/or deliberately indifferent to the constitutional rights of plaintiff, and caused the injuries enumerated in this Complaint.

57.     Upon information and belief, other individuals with policy making authority for the District of Columbia tacitly approved of or ratified the actions of lower ranking officials in allowing plaintiff to reside in the conditions described herein. Such conduct by policy makers amounts to an unlawful policy or custom for which the District of Columbia is liable.

58.     Upon information and belief, it was the custom of D.C. to improperly place mentally retarded residents in unsafe environments such as that provided by the non-municipal Defendants without adequate medical and nursing care as required by law.

59.     Upon information and belief, D.C. policy makers authorized and/or ratified the placement of plaintiff in the conditions described herein.

60.     All of the conduct of the defendants was under the color of the statutes, ordinances, regulations, customs and usages of the District of Columbia.

61.     Defendant D.C. knew or should have known that the placement of plaintiff in an unsafe environment constituted a violation of Venita Felton's rights under the Fifth and

Fourteenth Amendments to the United States Constitution. The District of Columbia acted intentionally and/or with deliberate indifference to the high risk that a violation of Ms. Felton' constitutional rights would result from their acts.

62.     The actions and policies of defendants herein described violated the constitutional rights of Venita Felton under the Fifth and Fourteenth Amendments, in violation of her right to a safe and secure environment with freedom from harm.

63.     The defendant's conduct was intentional and/or the product of deliberate indifference, and was shocking, outrageous, and amounted to a violation of plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments.

64.     As a direct result of the actions and policies of the defendant, plaintiff suffered an unconstitutional taking of liberty in violation of her rights under the Fifth and Fourteenth Amendments.

65.     As a direct and proximate result of defendant's violations of Venita Felton's constitutional rights as described herein, Venita Felton suffered severe and substantial damages as set forth above.

## COUNT VI

### (Deprivation of Civil Rights under 42 U.S.C. §1983)
### (IDI, DCCS, VOCA and PSI)

66.     All of the preceding paragraphs are realleged and incorporated by reference herein.

67.     At all times relevant hereto, IDI, DCCS, VOCA and PSI ("the non-municipal defendants") were acting under color of the statutes, ordinances, regulations, customs and usages of the District of Columbia.

16

68.     At all times relevant hereto, the non-municipal defendants provided Ms. Felton with an unsafe environment which was inadequate to meet her medical and treatment needs.

69.     At all times relevant hereto, the environment at these facilities included untrained staff, lack of supervisory oversight, inadequate food and nutrition and substandard nursing and medical care which resulted in Venita Felton suffering from continued ingestion of unwanted foreign objects, malnourishment, ulcers, diarrhea, chronic constipation, abdominal scarring, and further related injuries leading to her death.

70.     The improper treatment and neglect of Venita Felton continued even after the ingestion of the glove as evidenced by a recurrence of ingestion of unwanted foreign objects, malnourishment, ulcers, diarrhea, chronic constipation, abdominal scarring and other injuries symptomatic of neglect.

71.     The non-municipal defendants did nothing to protect Venita Felton from harm or to provide her with the necessary care and treatment.

72.     The non-municipal defendants knew or should have known that the placement of Venita Felton in their facilities would result in the injuries described herein.

73.     The non-municipal defendants knew or should have known that the placement of Venita Felton in the unsafe environment at their facilities without adequate supervision, medical care or nutrition constituted a violation of constitutional rights under the Fifth and Fourteenth Amendments. The defendants acted intentionally or with deliberate indifference to the high risks that a violation of Venita Felton's constitutional rights would follow their acts.

74.     The actions of these defendants as described herein violated the Fifth and Fourteenth Amendment rights of Venita Felton to a safe and secure environment with freedom from harm.

75.     The conduct of these defendants was intentional and/or deliberately indifferent and was shocking, outrageous, and amounted to a violation of Venita Felton's substantive due process rights under the Fifth and Fourteenth Amendments.

76.     As a direct result of the actions and policies of these defendants as described herein, Venita Felton suffered an unconstitutional taking of liberty in violation of her Fifth and Fourteenth Amendment rights.

77.     As a direct and proximate result of defendants' violations of Venita Felton' constitutional rights as described above, Venita Felton suffered severe and substantial damages as set forth herein.

## COUNT VII

### (Violation of D.C. Code § 7-1301.02 et seq. and § 7-1305.14)
### (All Defendants)

78.     The preceding paragraphs are realleged and incorporated by reference, herein.

79.     At all times relevant hereto, Venita Felton was entitled to all of the civil and legal rights enjoyed by all other citizens of the District of Columbia and the United States, including but not limited to: a right to all civil and legal rights enjoyed by all persons as per D.C. Code §7-1301.02 (a)(1); a right to habilitation and care suited to her needs as per D.C. Code §7-1305.01 (a); a right to habilitation programs to maximize and enhance her abilities as per D.C. Code §7-1305.01 (b); a right to the least restrictive and most normal living conditions possible as per D.C. Code §7-1305.02; a right to annual comprehensive evaluations and individual habilitation plans, and habilitation and care consistent with those plans as per D.C. Code §7-1305.04; a right to "a humane psychological and physical environment" as per D.C. Code §7-1305.05 (d); other rights accorded by D.C. Code §7-1305.05; and a right not to be mistreated, neglected or abused in any form as per D.C. Code §7-1305.10.

80.     Said defendants violated Venita Felton's civil and legal rights under D.C. Code §7-1301.02 et seq. and §7-1305.14 by:

(a)     failing to provide a clean safe living environment;

(b)     failing to provide adequate nursing and medical care;

(c)     failing to provide adequate food, clothing and shelter;

(d)     failing to provide properly trained and monitored staff;

(e)     failing to prevent the neglect and abuse of Felton; and

(f)     failing to provide adequate supervision and oversight, all in violation plaintiffs' civil rights.

81.     As a direct and proximate result of the defendants' violations of plaintiffs' civil and legal rights described herein, plaintiffs have suffered severe and substantial damages as set forth above.

### COUNT VIII

### (Violation of D.C. Code §7-1301.02, et seq. and §7-1305.13)
### (All Defendants)

82.     The preceding paragraphs are realleged and incorporated by reference, herein.

83.     At all times relevant hereto, Venita Felton was entitled under D.C. Code §7-1301.02 et seq. and §7-1305.13 to a program of habilitation and an individual habilitation plan adequate to meet her needs.

84.     Said defendants violated plaintiff's rights under D.C. Code §7-1301.02 et seq. and §7-1305.13 by:

(a)     failing to adequately document plaintiff's IHPs;

(b)     failing to provide adequate training in personal hygiene and food preparation;

(c)     failing to adequately identify plaintiff's medical and nursing needs, provide timely medical checkups and documentation of medication;

(d)     failing to provide an appropriate plan of habilitation; and

(e)     failing to assist plaintiff in raising her physical, intellectual, social, emotional and economic well-being.

85.     As a direct and proximate result of the defendants' violations of Venita Felton' rights as described herein, plaintiff has suffered severe and substantial damages as set forth, above.

## COUNT IX

### (Punitive Damages)
### (Non-Municipal Defendants)

86.     The preceding paragraphs are realleged and incorporated by reference, herein.

87.     Despite defendants' knowledge of Felton's health condition and needs, defendants willfully neglected Felton, allowing her to continue ingesting unwanted foreign objects, suffer ulcers, diarrhea, chronic constipation, abdominal scarring, and malnourishment and other injuries symptomatic of neglect.

88.     Even after Ms. Felton ingested the glove, defendants willfully failed to provide even minimally acceptable levels of care to Ms. Felton.

89.     By neglecting Felton, said defendants acted deliberately and with willful disregard for the rights of Venita Felton.  Defendants conduct in so acting was outrageous and grossly reckless toward the safety of Venita Felton.

90.     As a result of these defendants' knowing and intentional malicious acts, Felton has been damaged as aforesaid and is entitled to recover punitive damages against these defendants.

## MISCELLANEOUS ALLEGATIONS

91.    Plaintiff reserves her right to amend these pleadings as necessitated by discovery.

92.    Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the defendants, the District of Columbia, Individual Development Inc., the District of Columbia Community Services, Community Alternatives of D.C. Inc. and PSI Associates, jointly and severally, as follows: (1) compensatory damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00); (2) punitive damages against defendants IDI, DCCS, VOCA and PSI in an amount to be determined by the jury; (3) interest, costs, and attorneys fees pursuant to Counts IV, V, VI and VII; and (4) any further and additional relief as this court deems just and proper.

Respectfully submitted,

Harvey S. Williams
Unified Bar No. 437147
Law Office of Harvey S. Williams
1666 Connecticut Avenue, N.W.
Suite 225
Washington, D.C. 20009
Tel. No. (202) 462-5900
Fax No. (202) 462-5904
hsw@williamslegal.com

Counsel for Plaintiff